Bobert V. 'Santángelo, J.
The action Avas brought to recover damages for personal injuries and loss of services alleged to have been sustained on July 24, 1954, at about 3:00 p.m., by the infant plaintiff as a result of a fall from a ladder bar on the premises of the defendant, Camp Sussex, Inc., located in New Jersey.
Findings of facts and conclusions of law Avere tvaived. The infant plaintiff alleges that, avMIc she Avas a nonpaying member at the defendant’s camp in Sussex, Ncav Jersey, she fell from a piece of playground equipment, under Avhich there Avere certain rocks, and as a result of her fall sustained a compound fracture of the right arm. The plaintiffs allege that the defendant Avas negligent in permitting rocks to be under the playground equipment, and in the supervision of children utilizing the equipment. The defendant denied that there were rocks and contended that the infant plaintiff was adequately supervised. The defendant further contended that the plaintiffs failed to prove that the infant plaintiff was free of contributory negligence, that the defendant was in any Avay careless or negligent, or that the alleged negligence of the defendant Avas the proximate cause of the plaintiff’s injuries, and that the infant had assumed the risk of an open and obvious condition.
The court is satisfied from the evidence that a counselor was assigned to this play area and was physically present at the time of the accident but gave no instruction to the infant plaintiff as to how to use or operate the crossbar. This was her first year as a counselor although she had previous experience as an athletic director and had attended camp as a waitress prior thereto. The infant plaintiff was one of 400 children that Avere invited by the defendant to the camp for several Aveeks ’ vacation *17 and the accident occurred during a regular recreation period. The infant was 11 years of age, had been at the camp on two previous occasions, but this was the first time that she used this equipment known as a ladder bar. This equipment was made of steel tubing, six feet long, two feet wide and six or seven feet high. The evidence indicates that the surrounding area of the athletic field surrounding the crossbar was generally level and grass-covered. There is, however, a sharp difference of opinion as to the condition of the area under the bar. The infant plaintiff testified that the area under the bar consisted of hard and bumpy sand and of four or five large rocks, big and small. Another camper, Mildred Chadoff, also an infant of about the same age, testified that there was no grass thereon but rocks one foot by three feet coming above the ground covered with dirt and that the supervisor or counselor was 50 feet away. Eosalie Meyers, the athletic counselor, testified that there was nothing wrong with the crossbar but that as the infant plaintiff swung across the bar her hand slipped, fell from the horizontal bar and she injured her arm. She testified that the ground under the bars was bare, trodden earth, level and smooth, and that there were no stones on the ground. She did not make this statement to the defendant’s investigator in her original statement. She testified further that she was three or four feet from the center of the crossbar watching the children and that there were three other girls at the ladder bar at the time of the accident and that she saw the infant plaintiff fall but did not pick her up because the child ran toward the. infirmary wdiile holding her arm. She admitted that she gave no instructions to the infants as to the use of the ladder bar. Nathan Gussowtestified that he was the executive director of the camp, lives at the camp during the Summer, and that Camp Sussex, Inc., is a nonprofit charitable organization providing free camp facilities to underprivileged children, that the camp receives no payment from any governmental agencies or from the children or their parents. He testified further that on the day of the accident he was informed that the infant plaintiff had fallen at the monkey bar, another piece of equipment on the athletic field, that he inspected that and found it in safe condition. He also testified that he had examined the crossbar also and found no rocks under the said crossbar notwithstanding the fact that he was informed at the time of the accident that the child was hurt at the equipment known as the monkey bar. He also testified that in addition to counselors he had a maintenance staff who seeded and prepared the grounds, that they were still in the defendant’s employ and that the maintenance keeper took *18 care of the grounds. He further testified that he himself made inspections of the camp grounds regularly. The defendant failed to call any maintenance employee to testify as to the condition of the ground on the day of the accident or prior thereto. The court was not impressed with this witness’ testimony because in the examination before trial he made no mention of the condition of the ground under the crossbar at that time.
The evidence discloses that the infant plaintiff had arrived the day before the accident and was told, with other campers, to avail herself of recreational facilities at the recreation field. While she was attempting to use the overhead ladder by alternately using each hand to grasp one of its rungs so as to move from one end to the other, and when she had reached a point approximately in the middle, she lost her grip and dropped a distance of approximately two feet to the ground. The court finds that she landed on her feet upon a protruding rock when her feet hit the ground, causing her to lose her balance and fall on her right arm. Her right arm came in contact with a rock and there was a break through the skin where the arm was fractured. The court examined and found the sear still existing on the arm where the bone pierced through the skin. On the day of the accident the infant plaintiff was examined by camp physicians, attended to and was sent to Brooklyn Jewish Hospital, where she remained until August 13, 1954. The hospital record indicates the infant sustained a mid-shaft fracture of the right radius and ulna, that during two operative procedures and a closed reduction of the fracture her arm was placed in traction and then plaster of Paris was placed on the arm extending from the tips of her fingers to a point midway between the elbow and the shoulder. The arm was in a cast for about 10 weeks. Following the discharge, she continued to receive outpatient care and therapy at the above-mentioned hospital until the middle of December of the same year. The hospital bill of the Brooklyn Jewish Hospital amounted to $427.05.
The court finds as a fact that there were rocks beneath the ladder bars as testified to by the infants. The defendant was duly bound to keep such area free of such a condition. The condition was such as one could reasonably foresee might result in injury to another if an infant of the plaintiff’s age, immaturity and inexperience, as well as lack of knowledge and comprehension based on the limited period during which she was in camp and observed the recreational devices, lost her grip on the crossbar and fell upon the uneven rocky bottom which caused her to lose her balance and fall upon the said rocks upon her *19 arm. The law will, under these circumstances, hold one negligently creating such a condition as responsible and therefore liable for the injuries sustained. The court holds that the condition was a dangerous one and that the defendant should have reasonably foreseen that injuries could result therefrom under the circumstances in this case which were likely to occur during the use of said crossbars in this recreational area. The court is satisfied that the presence of the rocks immediately underneath the ladder bar in the condition in which the ground underneath the ladder bar was negligently and carelessly kept and maintained, coupled with the fall from the crossbar by the infant plaintiff, was the prime and proximate cause of the injury sustained by the infant plaintiff when she fell upon the rocks. The court also finds that due to the infant’s age, lack of comprehension and experience in her use of the crossbar for the first time, which she was invited to select and use in this recreational area, there was not such an obvious and open dangerous condition impressed upon the infant’s mind which would result in an assumption of risk by the infant plaintiff as to make her guilty of contributory negligence. The court is satisfied that the defendant was careless and negligent in failing to provide a suitable and safe place under the ladder bar which campers using the same had a right to assume existed. The defendant had a duty to foresee and guard under the circumstances in this case against the possible hazard that might attend participation by an infant camper in the usual and ordinary course of activity of camp life. The court observed the witnesses and was more impressed with the testimony of the infants than with that of the mature, highly intelligent witnesses called by the defendant although the defendant’s witnesses testified there were no stones or rocks under the crossbar. The best evidence of the nonexistence of such stones or rocks could have been furnished, in the court’s opinion, by the ground keeper, who for many years took care of the condition of the camp grounds and the athletic apparatus. The defendant failed to produce such a witness. He was available to the defendant. He was not equally available to the plaintiff, as the ground keeper lived at Camp Sussex, which was located in New Jersey. The court does not consider such testimony as cumulative but most important to shed light on the disputed issue of the condition of the ground under the crossbar. Because of such failure to produce this witness the court resolved the issue of the condition of the ground under the crossbar as testified to by the infants.
Hpon all the facts and the evidence, the court finds that the infant plaintiff has sustained the burden of proof by a fair *20 preponderance of credible evidence and was in no wise contributorily negligent. The Clerk is directed in the infant’s behalf to enter judgment in the sum of $6,000. With respect to the cause of action of Susie Bobbins, the mother of the infant plaintiff, the court directs judgment in her behalf for loss of services in the sum of $100.